**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

MENZIES MIDDLE
EAST AND AFRICA SA,

     *Petitioner/Judgment Creditor*

v.

REPUBLIC OF NIGER,

     *Respondent/Judgment Debtor.*

Case No. 1:25-mc-00332-JMF

**MENZIES MIDDLE EAST AND AFRICA SA'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS ORDER TO SHOW CAUSE FOR**
**(1) ORDER FOR ATTACHMENT AND EXECUTION OF JUDGMENT;**
**(2) TEMPORARY RESTRAINING ORDER; AND (3) INJUNCTIVE RELIEF**

M. Zachary Bluestone
**GLUCK BLUESTONE, P.C.**
52 Duane Street, 7th Floor
New York, NY 10007
Tel: (646) 970-7712
Fax: (202) 792-6658
zbluestone@gluckbluestone.com
*Attorneys for Petitioner/Judgment Creditor*

Arnoldo B. Lacayo
**SEQUOR LAW, P.A.**
1111 Brickell Drive, Suite 1250
Miami, Florida 33131
Tel: 305-372-8282
alacayo@sequorlaw.com
*Attorneys for Petitioner/Judgment Creditor*
*Pro Hac Vice Pending*

# TABLE OF CONTENTS

I. **PRELIMINARY STATEMENT** ............................................................................ 1

II. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY** .................................... 2

    A. The Underlying Dispute and Arbitral Award .......................................... 2

    B. Recognition and Confirmation of the Award ......................................... 2

    C. Niger's Ownership of Commercial Real Estate in New York ........................... 3

III. **ARGUMENT** ............................................................................................ 4

    **A. The Court Should Issue a Writ of Execution and Order of Attachment** ..................... 4

        1. The Property is Not Immune From Execution ................................... 5

        2. The Property is Used For a Commercial Activity ................................ 5

        3. A Reasonable Time Has Elapsed ................................................ 8

    **B. The Court Should Issue a Temporary Restraining Order and Preliminary Injunction to Preserve the Status Quo of the Property** ........................ 9

        1. MMEA is Likely to Succeed on the Merits of its Motion ......................... 10

        2. MMEA Will Suffer Irreparable Harm is the Property is Encumbered or Sold ............. 10

        3. The Balance of Equities Favors Issuing Injunctive Relief ......................... 12

        4. Granting Injunctive Relief Promotes Interest ................................... 13

        5. MMEA is Likely to Succeed on the Merits of its Motion ......................... 13

IV. **CONCLUSION** .......................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*Africard Co. Ltd. v. The Republic of Niger*, No. 1:16-mc-00370-P1 (S.D.N.Y.) .................. 7, 8, 11

*Bainbridge Fund Ltd. v. Republic of Argentina*, 2025 U.S. Dist. LEXIS 123645,
 (S.D.N.Y. June 30, 2025) ........................................................................................ 13

*Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) ................................... 11

*Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126 (2d Cir. 1997) ....................................................... 14

*Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, No. 93-cv-8100-JFK,
 1994 U.S. Dist. LEXIS 15494, (S.D.N.Y. Oct. 28, 1994) ........................................................... 12

*Export-Import Bank of China v. Republique du Niger*, No. 1:97-cv-03090-LAK-SN
 (S.D.N.Y. Mar. 19, 2015) ........................................................................................ 12

*Firemen's Ins. Co. v. Keating*, 753 F. Supp. 1146 (S.D.N.Y. 1990) ................................................ 12

*Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, (S.D.N.Y. 1988) ........... 9

*In re 650 Fifth Ave. & Related Props.*, No. 08-cv-10934,
 2014 U.S. Dist. LEXIS 42531, (S.D.N.Y. Mar. 28, 2014) ......................................................... 6

*In re Feit & Drexler, Inc.*, 760 F.2d 406, (2d Cir. 1985) ................................................................. 10

*Joseph v. Office of the Consulate Gen. of Nigeria*, 830 F.2d 1018, (9th Cir. 1987) ...................... 6

*Letelier v. Republic of Chile*, 748 F.2d 790, (2d Cir. 1984) ........................................................... 5

*Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, (D.D.C. 2001) .. 8, 9

*NML Capital, Ltd. v. Republic of Argentina*, 680 F. 3d 254, (2d Cir. 2012) ............................. 6, 10

*Owens v. Republic of Sudan*, 141 F. Supp. 3d 1, 8 (D.D.C. 2015) ................................................. 9

*Peterson v. Islamic Republic of Iran*, No. 10-cv-4518,
 2013 U.S. Dist. LEXIS 40470, 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) .......................... 9

Republic of Argentina v. Weltover, Inc., 504 U.S. 607, (1992) ................................................. 6, 7

*Seijas v. Republic of Argentina*, 352 F. App'x 519, (2d Cir. 2009) ............................................... 10

*Smith ex rel. Estate of Smith v. Fed. Reserve Bank of N.Y.*, 346 F.3d 264 (2d Cir. 2003)............. 11

*Smith v. Fed. Reserve Bank of N.Y.*, 280 F. Supp. 2d 314, (S.D.N.Y. 2003),
    *aff'd*, 75 F. App'x 860 (2d Cir. 2003) ........................................................................ 10

*United States v. First Nat'l City Bank*, 379 U.S. 378, (1965) ...................................... 13

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, (2008) .......................................... 10

**STATUTES**

28 U.S.C. § 1603(d) ....................................................................................................... 5, 6
28 U.S.C. § 1610(a)(6) (2025) .......................................................................................... 5
28 U.S.C. § 1610(c) .......................................................................................................... 8

**RULES**

Fed. R. Civ. P. 65............................................................................................................. 9

Petitioner/Judgment Creditor Menzies Middle East and Africa SA ("MMEA" or "Judgment Creditor") submits this Memorandum of Law in support of Motion, by way of Order to Show Cause, for (1) an order providing for the attachment and execution of a certain parcel of real property owned by the Republic of Niger, and located at 5 East 80th Street, New York, NY (the "Property"), pursuant to 28 U.S.C. § 1610(a) and (c), Fed. R. Civ. P. 69, and N.Y. C.P.L.R. 5230; (2) a temporary restraining order, and (3) injunctive relief preventing Niger from transferring or encumbering the Property until further order of the Court, or transferring, concealing, or removing from this District any lease or rent proceeds derived from the leasing of the Property.

## I.        PRELIMINARY STATEMENT

MMEA holds a final U.S. judgment confirming an ICSID arbitral award against the Republic of Niger for $7,603,623.31, plus post-judgment interest. Niger initially appeared in the underlying arbitration, but its counsel withdrew prior to its conclusion and the rendering of the award. Otherwise, Niger defaulted in the confirmation action, and has taken no steps to satisfy the Judgment. MMEA now seeks immediate, targeted relief to preserve the only known U.S. asset available to satisfy that Judgment: Niger's $35 million, income-producing Property in Manhattan. That Property is not used for any diplomatic or consular function; it is leased to a private tenant under a long-term lease and maintained as a commercial investment. Because the Judgment is based on a confirmed arbitral award, the Property is used for commercial activity in the United States, and a reasonable period of time has elapsed, the Foreign Sovereign Immunities Act ("FSIA") permits attachment and execution. 28 U.S.C. § 1610(a)(6), (c).

A temporary restraining order is likewise warranted to maintain the status quo and prevent Niger from frustrating enforcement through a sale, transfer, or encumbrance of the Property before the Court can rule on MMEA's execution application. Without immediate injunctive relief,

MMEA risks irreparable harm: the dissipation of the sole readily attachable U.S. asset that can satisfy the Judgment. The Court should therefore issue a temporary restraining order and set an expedited schedule for a preliminary injunction and for entry of the requested writ of execution and order of attachment.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.      <u>The Underlying Dispute and Arbitral Award</u>

The underlying dispute arose from Niger's unilateral termination of a ten-year investment and concession agreement, under which MMEA operated ground-handling services at Niger's principal airport, after making substantial capital investments. Despite MMEA's performance, Niger reduced the concession term, terminated the agreement by ministerial decree, created a competing state-run entity, and requisitioned MMEA's equipment and personnel without compensation.

After domestic proceedings in Niger failed to remedy the expropriation, MMEA initiated arbitration before the International Centre for the Settlement of Investment Disputes ("ICSID"). On July 15, 2013, the ICSID tribunal issued a final arbitral award finding that Niger had unlawfully breached the investment agreement and ordering Niger to pay MMEA €4,641,592.15 in damages and €118,000 in defense costs, arbitration costs, and interest (the "Award").

### B.      <u>Recognition and Confirmation of the Award</u>

MMEA MEA subsequently commenced an action in the United States District Court for the District of Columbia to confirm the Award pursuant to the ICSID Convention and the Foreign Sovereign Immunities Act ("FSIA"). Menzies Middle East and Africa SA v. Republic of Niger, No. 24-0466(ABJ), (D.D.C.) ("Confirmation Action"). Niger was properly served with process but failed to appear or otherwise respond, and the Clerk entered default on July 29, 2024. See Default,

Confirmation Action, ECF No. 10. By Memorandum Opinion and Order dated July 3, 2025, the D.C. District Court confirmed the Award and entered final judgment in favor of MMEA and against the Republic of Niger in the amount of $7,603,623.31, plus post-judgment interest (the "Judgment"). ECF No. 1, 3-16. Niger was served with a copy of the Judgment, including a French translation, on August 27, 2025. Declaration of Christian Buhlmann ("Buhlmann Decl."), ¶¶ 9-10.

On August 5, 2025, MMEA registered the Judgment in the U.S. District Court for the Southern District of New York. ECF No. 1.

C.      **Niger's Ownership of Commercial Real Estate in New York**

It is no secret that Niger owns commercial real estate in New York. In December 2016, a French-language African newspaper published a news article stating that Niger owned assets in various other countries, including "a building located in the center of New York." Matthieu Olivier, "Niger: les vieux comptes ne font pas les bons amis" ("Niger: Old Accounts Do Not Make Good Friends"), *Jeune Afrique* (Dec. 27, 2016), *available at* http://www.jeuneafrigue.com/mag/384823/societe/niger-vieux-comptes-ne-bons-amis/; Buhlmann Decl., ¶ 12.

In fact, Niger has owned this multi-story mansion in the Upper East Side of Manhattan for almost fifty years. Niger purchased the Property in 1977, as reflected by a deed recorded with the County of New York. Buhlmann Decl., ¶ 13, Ex. B. In 2025, the New York City Department of Finance reported that the Property has a fair market value of $35,128,000.00. Buhlmann Decl., ¶ 14, Ex. C. The Property is Niger's only known asset in the United States having value and subject to execution and attachment. *Id*., ¶ 17.

Niger does not maintain the Property as embassy property or for any apparent diplomatic function. *Id*., ¶ 18. Niger keeps the property as a real estate investment and has used it to earn "tidy

profit over the years." *David Seifman,* "As Niger starves, its government keeps $25M NYC pad," *New York Post* (Jan. 30, 2011), *available at* http://nypost.com/2011/01/30/as-niger-starves-its-government-keeps-25m-nyc-pad/#ixzz1Ccj0hptm. Buhlmann Decl., ¶ 19, Ex. F. In the 1990s, Niger rented the Property to Imelda Marcos, former first lady of the Philippines. *Id.*

In 2002, Niger began renting the Property to a company called 5 E. 80th St., LLC, whose managing partner was listed as Aby Rosen. Amended and Restated Memorandum of Lease (Sept. 22, 2002), Buhlmann Decl., ¶¶ 20-21, Ex. G. Mr. Rosen is a prominent New York City real estate developer. *See* RFR Profile, available at https://rfr.com/about-rfr/rfr-profile (last accessed Dec. 24, 2025). Buhlmann Decl., ¶¶ 21-23 Exs. H-I. Mr. Rosen appears to have lived in the Property and treated it as his home since 2002. *Id.*, ¶¶ 24-27. In 2012, Niger (as landlord) and Mr. Rosen's company (as tenant), 5 E. 80th St., LLC, executed an amendment to the 2002 lease and extended Mr. Rosen's lease of the Property through August 1, 2032. First Amendment to Amended and Restated Memorandum of Lease (April 16, 2012), *Id.*, ¶ 25, Ex. J. In 2018, where attachment of the Property was sought in an unrelated suit against Niger, the D.C. District Court confirmed that Mr. Rosen was the tenant of the Property and was obligated "to make all future rental payments to Niger, pursuant to the obligations of the lease agreement." *Id.*, ¶ 26.

Niger appears to own the Property free and clear. Satisfaction of Mortgage (June 26, 1978), *Id.*, ¶ 16, Ex. E. And recent property tax records of New York City indicate that Niger remains an active owner, having paid taxes on the property through 2024. *Id.*, ¶ 15, Ex. D.

## III. ARGUMENT

### A. The Court Should Issue a Writ of Execution and Order of Attachment

While the general rule is that property of a foreign sovereign present in the United States is immune from execution, such property may be attached and executed upon when one of the

FSIA's exceptions apply. Here, as described below, the Court should allow MMEA to attach and execute upon the Property because (1) the Judgment is based on an order confirming an arbitral award against Niger; (2) the Property is used for a commercial activity in the United States; and (3) a reasonable period of time has elapsed between entry of the Judgment and execution thereon.

### 1. The Property is Not Immune From Execution

Under 28 U.S.C. § 1609 "foreign states are immune from execution upon judgments obtained against them, unless an exception set forth in § 1610 of the FSIA applies." *Letelier v. Republic of Chile*, 748 F.2d 790, 793 (2d Cir. 1984). Subsection 1610(a)(6)—the applicable exception in this case—provides that the foreign state's property used for a commercial activity is not immune from attachment or execution "when the judgment is based on an order confirming an arbitral award rendered against the foreign state." 28 U.S.C. § 1610(a)(6) (2025).

Here, the Judgment falls squarely within the § 1610(a)(6) exception: the judgment registered in this Court is based on the order of the U.S. District Court for the District of Columbia's Opinion and Order Confirming the Award entered by the ICSID tribunal against Niger. ECF No. 1.

### 2. The Property is Used For a Commercial Activity

Next, the Court must determine whether the Property is used for a commercial activity. The FSIA defines "commercial activity" as "a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* The FSIA's legislative history indicates that Congress intended to afford courts "a great deal of latitude" in determining what constitutes "commercial activity" under the FSIA. *See* H.R. Rep. No. 94-1487, at 16 (1976)). The same

legislative history gives examples of what Congress considered to be commercial, rather than governmental, activity. *Id.* (stating commercial activities are "[a]ctivities such as a foreign government's sale of a service or a product, its leasing of property, its borrowing of money . . .").

To determine the nature of the foreign state's act, courts ask "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce." *NML Capital, Ltd. v. Republic of Argentina*, 680 F. 3d 254, 257-58 (2d Cir. 2012) (emphasis in original). The purpose of the activity is irrelevant. 28 U.S.C. § 1603(d); *NML Capital*, 680 F.3d at 258-59 (concluding governmental purpose of the commercial activity is irrelevant).

Here, Niger's leasing real property to a private tenant in exchange for rent is a paradigmatic example of commercial activity under the FSIA. *See Joseph v. Office of the Consulate Gen. of Nigeria*, 830 F.2d 1018, 10124 (9th Cir. 1987) (finding commercial activity exception applied and Nigeria not immune from breach of contract claim when the Consulate General of Nigeria rented a residence from a private landlord); *In re 650 Fifth Ave. & Related Props*., No. 08-cv-10934, 2014 U.S. Dist. LEXIS 42531, at *62-63, (S.D.N.Y. Mar. 28, 2014) (finding properties were "obviously used for commercial activity" where foreign sovereign leased properties to private individuals for rent, paid property taxes, and held properties as investments). The payments that Niger receives from the Property lease are also not immune assets because the "use of the Building and associated bank accounts was, as a matter of law, a commercial activity." *Id*. at 61 (relying on *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) which held commercial activity is any action by "by which a private party engages in trade and traffic or commerce."). Though the consideration provided to Niger for the lease of the Property does not change the analysis because "engaging in a commercial act does not require the receipt of fair value, or even compliance with the common-

law requirements of consideration." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. at 616. Simply put, the U.S. Supreme Court has held that when a foreign sovereign acts "in the manner of a private player within the market," rather than exercising uniquely sovereign powers, it engages in commercial activity. *Id*. at 614. Niger's conduct with respect to the Property is indistinguishable from that of any private real estate investor.[1] Niger purchased the Property on the open market, has maintained ownership for nearly five decades, regularly pays property taxes, and has repeatedly leased it to private individuals and entities for residential use. Most notably, Niger entered into a long-term lease with a private New York real estate company, negotiated amendments extending that lease through 2032, and has continuously received rental income from the Property. These are precisely the types of acts—leasing, collecting rent, amending lease terms, and holding property for investment—that private landlords regularly perform.

Determining that this Property is not immune from attachment is not a new issue for this Court. In 2017, for the same general reasons included herein, this Court determined that the Property was not immune from attachment under the FSIA because it was used for commercial activity. *See Africard Co. Ltd. v. The Republic of Niger*, No. 1:16-mc-00370-P1 (S.D.N.Y.), ECF No. 28 at 2-3. As a result, that Court issued a temporary restraining order preventing Niger from transferring or encumbering the Property, ultimately ordering that a writ of execution be issued:

> WHEREAS, Niger owns a multi-story building at 5 East 80th Street in the County, City and State of New York (the "Property");
>
> WHEREAS, **the Property is not immune from attachment under the FSIA because Niger uses the Property for commercial activity**…;

---

[1]     Critically, the Property is not used for diplomatic or consular purposes, nor is it connected to any sovereign or public function. Buhlmann Decl., ¶ 18. Niger does not operate an embassy, mission, or governmental office at the Property. *Id.* Instead, the Property has been used exclusively as income-producing real estate, including serving as the private residence of its current tenant for more than two decades.

WHEREAS, on January 6, 2017, this Court entered an Order to Show Cause why an order should not be issued pursuant to Fed. R. Civ. P. 65 enjoining Niger, during the pendency of this action, from (1) selling, transferring, mortgaging, or in any manner encumbering the real property at 5 East 80th Street, in the City, County and State of New York; (2) entering into any new lease agreements concerning the Property; (3) assigning, terminating, or otherwise modifying in any way any existing lease agreements or arrangements concerning the Property; or (4) transferring, concealing, or removing from this District any rent proceeds or other moneys in respondent Niger's ownership, possession, or control that are related to the Property in any way; and further why an order should not be issued pursuant to 28 U.S.C. § 1610(a) and (c), Fed. R. Civ. P. 69, and N.Y. C.P.L.R. § 5230 providing for the attachment and execution of judgment upon the Property, and upon any rental proceeds or other moneys associated with the Property in Niger's ownership, possession, or control for the benefit of Africard;

It is hereby…ORDERED that the Clerk of Court shall immediately issue a writ of execution pursuant to Fed. R. Civ. P. 69 and N.Y. C.P.L.R. § 5230 providing for the attachment and execution of judgment upon the Property, and upon any rental proceeds or other moneys associated with the Property in Niger's ownership, possession, or control for the benefit of Africard to satisfy Africard's judgment; and it is further

*See Africard Co. Ltd. v. The Republic of Niger*, No. 1:16-mc-00370-P1 (S.D.N.Y.), ECF No. 28 at 2-3 (emphasis added).

Accordingly, because the Property is "used for a commercial activity in the United States" within the meaning of §1610(a), the Property is not immune and subject to attachment and execution.

### 3. A Reasonable Time Has Elapsed

The FSIA provides that a litigant may not attach a foreign state's property "until the court has . . . determined that a reasonable period of time has elapsed following entry of judgment and the giving of any notice required under section 1608(e) of this chapter." 28 U.S.C. § 1610(c).

Although the statute does not specify how courts should assess a reasonable time, courts have considered "evidence that the foreign state is actively taking steps to pay the judgment," the steps necessary to pay the judgment, or evidence of evasion of the judgment. *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d 64, 67 (D.D.C. 2001). The length of a reasonable time "will of course vary according to the nuances of each case." *Id.* Several courts

have noted that the absence of progress towards paying a judgment weighs against an extended pause prior to permitting attachment. *See, e.g.*, *Owens v. Republic of Sudan*, 141 F. Supp. 3d 1, 8 (D.D.C. 2015); *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 130 F. Supp. 2d at 67.

Generally, courts find that two to three months constitute reasonable time. *See, e.g.*, *Peterson v. Islamic Republic of Iran*, No. 10-cv-4518, 2013 U.S. Dist. LEXIS 40470, at *137, 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) (100 days was reasonable time); *Gadsby & Hannah v. Socialist Republic of Romania*, 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (two months constitutes a reasonable period of time under § 1610(c)); *Owens*, 141 F. Supp. at 8 ("[C]ourts have found periods of three months and less reasonable." (collecting citations)); *Ned Chartering*, 130 F. Supp. 2d at 67 (finding reasonable time had elapsed because six weeks was "sufficient for most governments to pass the minor legislation necessary to appropriate funds, and to organize and transfer the appropriate assets" and defendant had not taken any steps to satisfy debt).

Here, approximately five months have passed since entry of Judgment and its service on Niger. That amount of time, compounded with Niger's history of avoiding judgments and refusing to participate in this litigation, warrants entry of an order of attachment and execution and attachment.

In short, the Court may properly issue a writ of execution and issue an order of attachment to satisfy the Judgment because the Property is used for a commercial activity in the United States and all other conditions in § 1610 are met.

**B.     The Court Should Issue a Temporary Restraining Order and Preliminary Injunction to Preserve the Status Quo of the Property**

In aid of execution of the Judgment, the Court should issue a temporary restraining order and preliminary injunction under Fed. R. Civ. P. 65 prohibiting Niger from selling, transferring, encumbering, or otherwise disposing of the Property, or transferring, concealing, or removing from

this District any lease or rent proceeds derived from the leasing of the Property, pending further order of the Court. Such relief is necessary to preserve the Court's jurisdiction, prevent irreparable harm, and ensure that the Judgment is not rendered unenforceable by dissipation of Niger's sole known U.S. asset. Courts may grant provisional relief to preserve assets pending execution where, as here, the judgment creditor has established that the property at issue is subject to attachment under the FSIA. *See, e.g.*, *NML Capital, Ltd.*, 680 F.3d at 260 (affirming injunction requiring Argentina to specifically perform its obligations under equal treatment provision in bonds).

A party seeking a temporary restraining order or preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Seijas v. Republic of Argentina*, 352 F. App'x 519, 521 (2d Cir. 2009). Each factor strongly favors injunctive relief here.

### 1. MMEA is Likely to Succeed on the Merits of its Motion

MMEA has demonstrated a clear likelihood of success on the merits of its application for attachment and execution. As set forth above, the Judgment is based on a confirmed ICSID arbitral award, the Property is used for commercial activity in the United States, and a reasonable time has elapsed since entry and service of the Judgment. See 28 U.S.C. § 1610(a)(6), (c). Because Niger's Property is properly subject to execution, MMEA is highly likely to prevail on its underlying motion.

### 2. MMEA Will Suffer Irreparable Harm is the Property is Encumbered or Sold

Injunctive relief is appropriate when a failure to issue such relief could undermine a court's ability to grant effective relief on the merits of the claim. *See In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985); *Smith v. Fed. Reserve Bank of N.Y.*, 280 F. Supp. 2d 314, 316 (S.D.N.Y.

2003), *aff'd*, 75 F. App'x 860 (2d Cir. 2003), and *aff'd sub nom. Smith ex rel. Estate of Smith v. Fed. Reserve Bank of N.Y.*, 346 F.3d 264 (2d Cir. 2003) (plaintiffs faced likelihood of irreparable harm where plaintiff's sole source available to satisfy a judgment, funds from an account, were at risk of being disbursed). Irreparable harm also exists where, absent granting of equitable relief, "there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *See Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249–50 (2d Cir. 1999).

Here, MMEA will suffer irreparable harm absent injunctive relief. The Property is Niger's only known asset in the United States with sufficient value to satisfy the Judgment. If Niger sells, mortgages, transfers, or otherwise encumbers the Property before execution issues, Judgment Creditor's ability to enforce the Judgment from the Property will be permanently impaired.

In addition, Niger's past conduct shows a history of ignoring judgments, failing to appear in court, and ignoring court orders. Indeed, Niger's failure to participate in the proceedings led to MMEA obtaining its default judgment against Niger. And even after MMEA served Niger with the Judgment, Niger still failed to satisfy the Judgment or otherwise respond. Niger exhibited the same pattern twice before: First, in *Africard Co. Ltd. v. The Republic of Niger*, No. 1:16-mc-00370-P1 (S.D.N.Y.), the judgment creditor obtained a temporary restraining order and attachment order against the same Property as here, which originated from a D.C. District Court default judgment against Niger, and registered in this Court. *Id*. at ECF No. 18 (OSC for Temporary Restraining Order), 28 (Attachment Order). Ultimately, that case was dismissed and the Property remained in Niger's ownership and control undisturbed. Second, in 2015, in *Export-Import Bank of China v. Republique du Niger*, Magistrate Judge Sarah Netburn ordered sanctions against Niger for its failure to respond to court orders. Memorandum & Order Imposing Sanctions, *Export-Import Bank*

*of China v. Republique du Niger*, No. 1:97-cv-03090-LAK-SN (S.D.N.Y. Mar. 19, 2015), ECF No. 106 at 8. There, the court found

> The character and magnitude of the financial harm threatened [by Niger's conduct] are momentous. Niger has failed to satisfy, or even attempt to satisfy in any part, the order of judgment, entered sixteen years ago. What began as a roughly $75 million order of judgment in 1998 has now accrued with interest to over $180 million. . . .

*Id.* at 7.

Given the absence of other known assets of Niger in the United States, Niger's dissipation of the Property would effectively make Niger judgment-proof—which is significant grounds for showing a likelihood of irreparable harm. *Energy Capital Co. v. Caribbean Trading and Fidelity Corp.*, No. 93-cv-8100-JFK, 1994 U.S. Dist. LEXIS 15494, at *6 (S.D.N.Y. Oct. 28, 1994) (preliminary relief granted where risk existed that judgment debtor "will become judgment proof"); *Firemen's Ins. Co. v. Keating*, 753 F. Supp. 1146, 1153 (S.D.N.Y. 1990) (injunctive relief proper where non-movant could remove assets).

In short, the risk of irreparable harm is particularly acute here, because the judgment debtor is a foreign sovereign with a documented history of non-payment, evasion, and a refusal to participate in litigation. Once sold or encumbered, the Property—Niger's sole known U.S. asset subject to attachment and execution—will be placed beyond the reach of MMEA, frustrating execution and depriving MMEA of its only viable means of recovery in the United States.

### 3. The Balance of Equities Favors Issuing Injunctive Relief

The balance of equities weighs decisively in MMEA's favor. MMEA holds a valid and final U.S. judgment that has remained unsatisfied for months, based on an ICSID award rendered over 12 years ago. Niger, by contrast, will suffer no cognizable hardship from an order merely preserving the status quo.

The requested relief does not dispossess Niger of the Property, interfere with the existing lease, or require Niger to take any affirmative action. It simply prevents Niger from frustrating enforcement by transferring or encumbering the Property, or transferring any lease or rent proceeds derived from the leasing of the Property, while this Court adjudicates MMEA's attachment and execution rights. Such limited restraints impose minimal burden on judgment debtors and are equitable where necessary to protect a creditor's rights. *See United States v. First Nat'l City Bank*, 379 U.S. 378, 385 (1965) (affirming temporary injunction to prevent further dissipation of assets). Any inconvenience to Niger is self-inflicted, arising from its refusal to satisfy a lawfully entered judgment.

### 4. Granting Injunctive Relief Promotes Interest

The public interest strongly favors enforcement of arbitral awards and final judgments, particularly those arising under the ICSID Convention. The United States has a substantial interest in honoring its treaty obligations and ensuring that foreign sovereigns do not evade valid judgments rendered by U.S. courts. *See Bainbridge Fund Ltd. v. Republic of Argentina*, 2025 U.S. Dist. LEXIS 123645, at \*25 (S.D.N.Y. June 30, 2025) ("The United States has a strong interest in enforcing its judgments, and that interest outweighs any putative Argentine interest in avoiding execution on assets that are fully subject to execution under the FSIA.").

Allowing Niger to dissipate its only known U.S. asset would undermine confidence in international arbitration, frustrate U.S. foreign policy interests, and encourage judgment evasion by sovereign debtors. Preserving the Property pending execution promotes respect for the rule of law and the integrity of the judicial process.

### 5. MMEA is Likely to Succeed on the Merits of its Motion

Finally, the Court should waive any bond requirement under Rule 65(c). Courts have "wide discretion" to dispense with a bond where the injunction serves to preserve assets pending

execution of a judgment and where the restrained party faces little risk of harm. *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997).

Here, the requested injunction merely maintains the status quo and poses no risk of damages to Niger. Requiring MMEA to post a bond would be inequitable and unnecessary, particularly given that MMEA already holds a final judgment confirming Niger's liability.

## IV. CONCLUSION

Based on the foregoing, MMEA respectfully requests that the Court (1) issue a writ of execution; (2) enter and order of attachment against the Property; (3) enter a temporary restraining order to preserve the status quo and prevent Niger from selling, transferring, encumbering, or otherwise disposing of the Property; and (4) grant such further relief as the Court deems just and proper.

DATED: February 4, 2026

Respectfully submitted,

**GLUCK BLUESTONE, P.C.**

By: */s/ M. Zachary Bluestone*
M. Zachary Bluestone
52 Duane Street, 7th Floor
New York, NY 10007
(646) 970-7712
zbluestone@gluckbluestone.com

**SEQUOR LAW, P.A.**

By: */s/ Arnoldo B. Lacayo*
1111 Brickell Drive, Suite 1250
Miami, Florida 33131
Tel: 305-372-8282
alacayo@sequorlaw.com
*Pro Hac Vice Pending*

*Attorneys for Petitioner/Judgment Creditor*
*Menzies Middle East and Africa SA*

## **L.R. 7.1 CERTIFICATION**

The undersigned counsel hereby certifies, pursuant to Local Rule 7.1(c), that this Memorandum of Law contains 4,424 words, including headings, footnotes, and quotations but excluding the caption, the table of contents, the table of authorities, the signature block.

DATED: February 4, 2026

By:*/s/ M. Zachary Bluestone*