MENZIES MIDDLE
EAST AND AFRICA SA,

     *Petitioner/Judgment Creditor*

v.

REPUBLIC OF NIGER,

     *Respondent/Judgment Debtor.*

Case No. 1:25-mc-00332-JMF

### DECLARATION OF CHRISTIAN BUHLMANN IN SUPPORT OF MENZIES MIDDLE EAST AND AFRICA SA'S ORDER TO SHOW CAUSE FOR (1) ORDER FOR ATTACHMENT AND EXECUTION OF JUDGMENT; (2) TEMPORARY RESTRAINING ORDER; AND (3) INJUNCTIVE RELIEF

I, Christian Buhlmann, pursuant to 28 U.S.C. § 1746, declare the following under penalty of perjury:

1.     I am a Director for Petitioner/Judgment Creditor Menzies Middle East and Africa SA ("MMEA" or "Judgment Creditor"), and as such, I am fully familiar with the facts and circumstances surrounding the action herein.

2.     I respectfully submit this declaration in support of MMEA's Order to Show Cause, for (1) an order providing for the attachment and execution of a certain parcel of real property owned by the Republic of Niger, 5 East 80th Street, New York, NY (the "Property"); (2) a temporary restraining order and (3) injunctive relief.

3.     The facts set forth in this declaration are based on my review of court records, public records, recorded property documents, governmental records, and publicly available sources, as well as my involvement in this matter.

***The ICSID Arbitration and the Confirmed Judgment***

4.     On July 15, 2013, an arbitral tribunal constituted under the International Centre for the Settlement of Investment Disputes ("ICSID") issued a final arbitral award in favor of MMEA and against the Republic of Niger (the "Award"), finding that Niger unlawfully breached an investment and concession agreement and awarding MMEA €4,641,592.15 in damages, plus €118,000 in defense and arbitration costs, together with interest.

5.     In February 2024, MMEA commenced an action in the United States District Court for the District of Columbia to confirm the Award pursuant to the ICSID Convention and the Foreign Sovereign Immunities Act ("FSIA"), captioned *Menzies Middle East and Africa SA v. Republic of Niger*, No. 24-0466 (ABJ) (D.D.C.) (hereinafter, the "Confirmation Action").

6.     Niger was properly served with process in the Confirmation Action but failed to appear or otherwise respond. On July 29, 2024, the Clerk of the Court entered default against Niger.

7.     By Memorandum Opinion and Order dated July 3, 2025, the U.S. District Court for the District of Columbia confirmed the Award and entered final judgment in favor of MMEA and against the Republic of Niger in the amount of $7,603,623.31, plus post-judgment interest (the "Judgment").

8.     The Judgment was registered in this Court on August 5, 2025, pursuant to 28 U.S.C. § 1963. ECF No. 1.

9. On August 13, 2025, the Clerk of the U.S. District Court for the District of Columbia certified, under penalty of perjury, that a copy of the Judgment, together with a translation into the official language of Niger (French), was dispatched by "FedEx" to the head of the ministry of foreign affairs, pursuant to the provisions of 28 U.S.C. § 1608(a)(3). Confirmation Action, ECF No. 16.

10. The Clerk's dispatch was sufficient for Niger to be served with a copy of the Judgment, together with a French translation. More so, FedEx records reflect that the Clerk's dispatch was signed for, and received, on August 27, 2025.

11. To date, Niger has not paid any portion of the Judgment and has not contacted MMEA or its counsel to propose payment or settlement.

*Niger's Ownership of Real Estate in New York*

12. In December 2016, the French-language publication *Jeune Afrique* reported that the Republic of Niger owned assets in several foreign countries, including "a building located in the center of New York." A true and correct copy of the *Jeune Afrique* article titled "Niger: les vieux comptes ne font pas les bons amis," dated December 27, 2016, including its English translation, is annexed hereto as **Exhibit A**.

13. Based on my review of public property records maintained by the County of New York, Niger has owned the Property since approximately 1977. A true and correct copy of the recorded deed reflecting Niger's ownership of the Property is annexed hereto as **Exhibit B**.

14. According to records of the New York City Department of Finance, the Property has a reported fair market value of approximately $35,128,000 as of 2025. A true and correct copy of the New York City Department of Finance property record for the Property is annexed hereto as **Exhibit C**.

3

15. New York City tax records reflect that Niger has continuously paid property taxes on the Property through at least 2024. Copies of recent New York City property tax records for the Property are annexed hereto as **Exhibit D**.

16. Based on my review of recorded instruments, Niger owns the Property free and clear of any mortgage. A true and correct copy of the Satisfaction of Mortgage dated June 26, 1978 is annexed hereto as **Exhibit E**.

17. Based on MMEA's investigation, including New York County real property records, and open-sourced databases, the Property is Niger's only known asset located in the United States with sufficient value to satisfy the Judgment that is not immune from execution.

*Commercial Use of the Property*

18. Based on MMEA's investigation, the Property is not used as an embassy, consulate, diplomatic mission, or for any apparent governmental or sovereign function. Instead, the Property has been held and used by Niger as an income-producing real estate investment for decades.

19. In January 2011, the New York Post reported that Niger had earned substantial rental income from the Property over the years, including from renting the Property to Imelda Marcos (former First Lady of the Philippines) in the 1990s. A true and correct copy of the *New York Post* article titled "As Niger starves, its government keeps $25M NYC pad," dated January 30, 2011, is annexed hereto as **Exhibit F**.

20. On September 22, 2002, Niger entered into an Amended and Restated Memorandum of Lease for the Property with 5 E. 80th St., LLC. A true and correct copy of the Amended and Restated Memorandum of Lease dated September 22, 2002 is annexed hereto as **Exhibit G**.

4

21. The 2002 Amended and Restated Memorandum of Lease identifies Aby Rosen as the managing partner of 5 E. 80th St., LLC. *See id.*, at 5 (referring to Aby Rosen as "managing member of 5 E. 80th St. LLC"). Mr. Rosen is a prominent New York real estate developer.

22. Further, the New York Department of States, Division of Corporation, records provide that when service on 5 E. 80th St., LLC is to be made through the secretary of state, a copy of the process should be mailed to RFR Holding LLC. The N.Y. DOS's Entity Information page for 5 E. 80th St. LLC is attached as **Exhibit H**.

23. According to its website, "RFR Holding LLC is a Manhattan-based, privately controlled real estate investment, development and management company founded in 1991 by Aby Rosen and Michael Fuchs." A true and correct print out of RFR Holding LLC's website is attached as **Exhibit I**.

24. Based on the 2002 Amended and Restated Memorandum of Lease and my own investigation of available public records and news articles, Mr. Rosen appears to have occupied the Property as his personal residence since approximately 2002.

25. On April 16, 2012, Niger and 5 E. 80th St., LLC executed a First Amendment to the Amended and Restated Memorandum of Lease, extending the lease term through August 1, 2032. A true and correct copy of the First Amendment to the Lease is annexed hereto as **Exhibit J**.

26. In 2018, in an unrelated action concerning the attachment of the Property, the U.S. District Court for the District of Columbia confirmed that Mr. Rosen was the tenant of the Property and was obligated "to make all future rental payments to Niger, pursuant to the obligations of the lease agreement." *Africard Co. Ltd., v. Republic of Niger*, Case No. 16-cv-196 (ABJ) (D.D.C. July 25, 2018).

27. In a March 2023 Supreme Court of New York filing in a property dispute with the neighbor to the Property, Mr. Rosen submitted emails referencing water leaks, the effect of such on his stairwell, corroborating his continued use of the Property as his residence and Niger's use of the Property for commercial purposes. *See The Board of Managers of the 3 East 80th Street Condominium v. 5 E. 80th St. LLC*, Index No. 159994/2021, NYSCEF Doc. No. 70, at 144, 148 (Sup. Ct., N.Y. Cty. filed Mar. 29, 2023).

### *Risk of Dissipation and Need for Immediate Relief*

28. Niger has a history of resisting arbitration, defaulting in confirmation proceedings, and failing to satisfy valid judgments entered against it.

29. Niger did not appear in the D.C. Confirmation Action and has taken no steps to pay or address the Judgment.

30. Absent immediate relief from this Court, Niger could sell, transfer, mortgage, or otherwise encumber the Property, placing it beyond the reach of execution and frustrating enforcement of the Judgment.

31. Because the Property is Niger's only known attachable U.S. asset, any disposition or encumbrance of the Property would irreparably harm MMEA' ability to enforce the Judgment.

32. The requested temporary restraining order and injunctive relief are necessary to preserve the status quo pending the Court's determination of MMEA's application for attachment and execution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 10, 2026

By _____
Christian Buhlmann

6