

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

Brian L. Beckerman
Tel: +1.212.858.1228
brian.beckerman@pillsburylaw.com

April 2, 2026

**VIA ECF**
Hon. Jesse M. Furman
United States District Court
Southern District of New York
500 Pearl Street, Room 2510
New York, NY 10007

> **Re:** ***Menzies Middle East and Africa SA v. Republic of Niger**, Case No. 25-mc-00332-JMF: Letter Response in Opposition to Petitioner's Request for Temporary Restraining Order*

Dear Judge Furman:

Reference is made to the Court's February 5, 2026 Order inviting the Republic of Niger ("Niger") to submit a response to Petitioner Menzies Middle East and Africa SA's ("Menzies") request for a temporary restraining order ("TRO"). The Court asked for the response to be in the form of a letter, not to exceed six pages. Dkt. No. 8 (Order). The Court afforded Niger until April 2, 2026, to submit its response. Dkt. No. 17 (Order).

Menzies seeks extraordinary emergency relief under Federal Rule 65 to restrain sovereign property in aid of execution on a money judgment entered in the United States District Court for the District of Columbia ("D.C. Judgment"). Menzies' application falls far short of the showing required for such relief. *First*, Menzies does not identify any imminent, irreparable harm. *Second*, Menzies fails to show a clear likelihood of success on the merits, because it has not established compliance with the FSIA's notice requirements and because there are unresolved questions as to the amount of the D.C. Judgment. *Third*, Menzies fails to establish that the balance of equities favors the TRO. *Last*, Menzies fails to establish that the TRO would further any public interest.

Accordingly, Niger respectfully requests that the Court deny Menzies' application for a TRO.

## I.    THE COURT SHOULD DENY PETITIONER'S REQUEST FOR A TRO

A temporary restraining order under Rule 65 is "an extraordinary remedy never awarded as of right." *Chengdu Tops Technology Co. Ltd. v. Partnerships and Unincorporated Associations Identified in Schedule A*, 2025 WL 1883818, at *1 (S.D.N.Y. July 8, 2025) (Furman, J.). The standard for obtaining a temporary restraining order is the same as for obtaining a preliminary injunction. *Id*. To obtain either, the moving party must demonstrate (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury; (3) that the balance of equities tips in its favor; and (4) that the injunction is in the public interest. *Id*. (citing *Jayaraj v. Scappini*, 66 F.3d 36, 38 (2d Cir. 1995)).

### A.    Menzies Will Not Suffer Irreparable Harm Absent the TRO

A showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Chengdu*, WL 1883818, at *1 (citing *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). The movant must show that injury is "neither remote nor speculative, but actual and imminent" and cannot be remedied by money damages. *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025). Non-specific references to potential or speculative harm do not suffice. *Chengdu*, WL 1883818, at *1 (quoting *St. Joseph's Hosp.*, 131 F.4th at 107). Critically, "delay, standing alone, may preclude the granting of [] injunctive relief because it suggests that there is, in fact, no irreparable injury." *Skillz Platform Inc. v. Voodoo SAS, et al.,* 2026 WL 717220, at *4 (S.D.N.Y., 2026); *accord Chengdu*, WL 1883818, at *2 (noting that delay in seeking injunctive relief undermines irreparable harm insofar as it "evinces a lack of urgency").

Menzies' substantial and unexplained **years-long delay** in seeking relief fatally undermines any claim of urgency or irreparable injury required to obtain injunctive relief. Specifically, Menzies received an ICSID Award dated July 15, 2013, but did not seek to confirm that award until **more than ten years later**, in February 2024, when it initiated proceedings in Washington, D.C. *See* Dkt. No. 6 (Memorandum) at 2. Menzies then registered the D.C. Judgment in this Court on August 5, 2025 and waited **another six months** before seeking injunctive relief in February 2026. *Id*. at 3.

The ten-plus years between the Award and Menzies initiating proceedings in Washington, D.C. and then yet another six months before seeking relief here is the antithesis of speedy action. If the alleged harm were truly urgent and incapable of remediation, Menzies would have acted promptly. Its inaction for over ten years demonstrates that any purported injury is either speculative, compensable by monetary damages, or otherwise insufficient to justify the extraordinary relief requested.

Notably, Menzies offers no explanation for its decade-long delay, and Mr. Buhlmann's Declaration offers nothing to suggest any sort of changed circumstances.

But even if Menzies had not unreasonably delayed, Menzies still has not identified any threat of irreparable harm to warrant injunctive relief. Menzies merely speculates that Niger "*could* sell, transfer, mortgage, or otherwise encumber the Property," and it further speculates that the proceeds of the sale will not be available in New York. *See* Dkt. No. 7 (Buhlmann Decl.) ¶ 30 (emphasis added). Thus, Menzies offers nothing more than what Niger "could" do – a far cry from evidence demonstrating that something is imminent. In fact, Niger has owned the Property since 1977, has continuously paid property taxes, and has leased the Property to the same tenant since 2002, with the lease currently in place until 2032 (*id*. ¶¶ 13, 15, 20, and 25), demonstrating that any sale or transfer of the Property is *not* imminent.

Lastly, the allegations in paragraphs 28 and 29 of Mr. Buhlmann's Declaration regarding Niger's litigation history are irrelevant and certainly not sufficient by themselves to establish imminent harm. All that history shows is that Niger has retained ownership of the Property for decades.

In sum, Menzies offers nothing to validate its speculation that a sale, refinancing, transfer, or encumbrance is imminent. Because Menzies seeks only to secure payment of a sum-certain judgment, and because its claimed risk that the Property could be sold, transferred, or encumbered is speculative rather than imminent, it has not made the "single most important" showing required for extraordinary equitable relief. The TRO should therefore be denied on that basis alone.

### B.    Menzies is Not Likely to Succeed on the Merits

Menzies cannot satisfy the likelihood-of-success requirement for at least two independent reasons. First, it has not shown compliance with the FSIA's statutory service requirements prior to execution. Second, there is a discrepancy between Niger's obligations under the D.C. Judgment and the ICSID Award. Niger has a right to seek an adjustment of the D.C. Judgment to conform it to the ICSID Award.

### 1.    Menzies Has Not Shown Compliance with the FSIA's Notice Requirement for Execution

Menzies cannot establish a likelihood of success because it has not shown compliance with the FSIA's service requirements. Under 28 U.S.C. § 1610(c), execution on a default judgment is barred until the foreign state has received notice of the judgment in accordance with § 1608(a). The service rules set out in § 1608(a)(3) demand strict adherence. *See Republic of Sudan v. Harrison,* 139 S. Ct. 1048, 1062 (2019). Section 1608(a)(3) authorizes service on a foreign state "by any form of mail requiring a signed receipt." *See also New England Merchants Nat. Bank v. Iran Power Generation and Transmission Co.,* 495 F. Supp. 73, 79 (S.D.N.Y. 1980) (noting that all methods of service under § 1608(a) apart from diplomatic channels require "a signed receipt from an authorized official of the foreign government before service is complete"). Although

Menzies states that Niger was served with a copy of the Judgment on August 27, 2025, it offers no proof that service was completed in accordance with the statutory requirements. *See* Dkt. No. 6 at 3.

> **2.    Menzies Has Not Shown That the D.C. Judgment Amount Clearly Reflects the Award's Pecuniary Obligations**

Menzies likewise cannot show likelihood of success because the amount it seeks to enforce via the D.C. Judgment does not match the Award's pecuniary obligations. The ICSID Award imposed Euro-denominated monetary obligations and required Niger to pay simple interest at "the annual marginal lending rate as set by the European Central Bank ['ECB']" from notification of the Award "until such sums are paid in full." The D.C. court, however, converted the Award's Euro-denominated amounts into U.S. dollars using a 2013 exchange rate and then applied a flat 1% interest rate, derived from the ECB marginal lending rate on July 15, 2013, through June 16, 2025.

That methodology does not implement the Award's terms. Under 22 U.S.C. § 1650a, the pecuniary obligations of an ICSID award "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." Because ICSID awards are enforced like out-of-state judgments, U.S. courts must respect the terms of ICSID awards as written. Niger has identified several ways in which the D.C. Judgment does not match the terms of the Award, and Niger has a right to seek adjustments so that the D.C. Judgment conforms to the ICSID Award.

*First*, because the Award's principal monetary obligations were expressly denominated in Euros, and the tribunal selected an ECB-based rate precisely because of its link to the Euro, there is at least a substantial question whether the D.C. Judgment is consistent with the Award after the D.C. court converted the Award to dollars as of 2013. The Award's Euro-denominated pecuniary obligations should be given full faith and credit *in Euros* and interest should accrue on a Euro-based principal amount. The value of the Award should reflect the value of the Euro. By changing the Award's currency as of 2013, the D.C. court did not give full faith and credit to the Award.

*Second*, the Award ties interest to the ECB marginal lending rate as set by the ECB over time, whereas the D.C. Judgment fixed the interest rate at 1% for the entire prejudgment period notwithstanding that the ECB marginal lending rate was below 1% from 2013 to 2022. Applying a 1% interest rate for these years effectively overcompensates Menzies and does not give full faith and credit to the Award.

*Third*, the D.C. Judgment aggregates interest accruing from 2013 to 2024 and then adds post-judgment interest at the applicable rate going forward. The Award says however that the ECB marginal lending rate should apply *until the award is fully paid*. The addition of post-judgment interest thus violates the terms of the Award.

4

To be clear, Niger is not asking this Court to recalculate the D.C. Judgment here. It asks only that the Court recognize that there are unresolved questions as to whether the D.C. Judgment amount faithfully reflects the Award. Those questions are for the rendering court to address, and their existence defeats the clear merits showing required to justify an emergency injunctive restraint of sovereign property.

### C. The Balance of Equities Tips Decidedly in Niger's Favor

To determine whether the balance of equities favors preliminary relief, courts must "balance the competing claims of injury." *Two Hands IP LLC v. Two Hands America, Inc.*, 563 F. Supp. 3d 290, 308 (S.D.N.Y. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Menzies does not (and cannot) identify any injury it would suffer if the TRO were denied. Menzies only speculates about what harm *might* happen in the future. On the other hand, Niger would suffer concrete injury if it suddenly lost access to its sovereign property or any income generated from that property.

### D. The TRO Would Not Promote Any Public Interest

The public has only a nominal interest in restraining Niger's assets because Menzies and Niger are both foreign parties and the underlying dispute occurred in Niger. While the United States has an interest in complying with the ICSID Convention, the Convention does not say anything about temporary restraining orders or attaching sovereign property. Accordingly, the TRO would not advance the United States' treaty obligations. Menzies fails to identify any other public interest the TRO would purportedly serve.

## II. CONCLUSION

For the foregoing reasons, Menzies has failed to make the required showing for extraordinary injunctive relief. Menzies has not established irreparable harm or a likelihood of success on the merits, the balance of equities weighs decidedly in favor of Niger, and issuance of the temporary restraining order would not promote any public interest. Therefore, Niger respectfully requests that Menzies' request for a temporary restraining order be denied in its entirety.

DATED: April 2, 2026                    Respectfully submitted,

                                        **PILLSBURY WINTHROP SHAW PITTMAN LLP**

                                        */s/ Brian L. Beckerman*
                                        Brian L. Beckerman
                                        Pillsbury Winthrop Shaw Pittman LLP
                                        31 West 52nd Street
                                        New York, NY 10019-6131

Tel: 212-858-1000
brian.beckerman@pillsburylaw.com

Gary J. Shaw (*admitted pro hac vice*)
Pillsbury Winthrop Shaw Pittman LLP
1200 17th Street NW
Washington, DC 20036
Tel: 202-663-8000
gary.shaw@pillsburylaw.com

*Counsel for Respondent Republic of Niger*

cc:    All Counsel of Record (Via ECF)

6